**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C., an Illinois Limited Liability Company,<br>   Plaintiff,<br><br> v.<br><br>PALM, INC.,<br>a Delaware Corporation,<br>   Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 1:10-cv-02411<br>)<br>)<br>) Hon. Rebecca R. Pallmeyer<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF/COUNTERDEFENDANT'S MOTION TO DISMISS AND TO STRIKE**

Plaintiff and Counterclaim Defendant Helferich Patent Licensing, L.L.C. ("HPL"), hereby moves the Court to dismiss the allegations of inequitable conduct made by Defendant and Counterclaimant Palm, Inc. ("Palm") in its Answer and Counterclaims in its Third Counterclaim and to strike the related allegations made in its Twelfth Defense pursuant to Rule 12(b)(6) and 12(f), Federal Rules of Civil Procedure ("Fed.R.Civ.P"), for failure to plead with the requisite particularity under Rule 9(b). In support of its motion, HPL states as follows:

**Introduction**

In its Third Counterclaim, Palm alleges that certain of the Asserted Patents were obtained by inequitable conduct. "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the PTO during prosecution." *Digital Control, Inc. v. Charles Mach. Works,* 437 F.3d 1309, 1313 (Fed.Cir.2006). The Federal Circuit historically

decried that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988); *Multipoint Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998). As a result, the Federal Circuit recently severely tightened the pleading requirements for inequitable conduct. Palm's allegations come nowhere near satisfying this heightened standard.

Because inequitable conduct rests on fraud-like allegations, it must be pled with particularity under Federal Rule of Civil Procedure 9(b). In *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), the Federal Circuit set forth specifically what must be alleged in pleading inequitable conduct:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328-29. Importantly, the specific what, where, how and why allegations require explanation of the alleged materiality of any misrepresentation or omission, with specific reference to the asserted claims and their limitations that are supposedly affected. *Id.* at 1329-30.

Palm makes three charges of inequitable conduct in its Third Counterclaim: 1) that Richard J. Helferich, inventor of the patents at issue in this case, and his counsel affirmatively

misrepresented the scope of a particular piece of prior art in responding to a rejection by the examiner in the application that issued as U.S. Patent 6,087,956;[1] 2) that Mr. Helferich and his counsel failed to disclose to the Patent and Trademark Office ("PTO") certain prior art of which they were aware in the applications that issued as U.S. Patents Nos. 7,003,304, 6,097,941, and 6,983,138, as well as the '956 Patent;[2] and 3) that Mr. Helferich and his counsel engaged in a pattern of failing to disclose to the PTO other applications pending at the same time.[3] For ease of discussion, the inadequacies of each of these assertions will be addressed in reverse order.

**A. The Third Allegation is Missing At Least the Who, What, Where and Why**

The Third Allegation, regarding failure to cross-cite co-pending applications, is the most general of the three. Palm generally accuses "those involved the prosecution of the patents-in-suit" of "repeatedly fail[ing] to disclose information concerning its co-pending applications." *See* ¶¶ 100, 102. Only one specific example is provided in paragraph 104.

First, filing applications at the same time is standard practice in patent prosecution. Particularly where the specification of the patent is complex, as with the patents in suit, examiners may issue a restriction requirement, an order stating that the claims relate to distinct inventions and that the sets of inventions need to be pursued separately, and not in one large application. When this happens, the applicant pursues the various claim sets in divisional applications, which legitimately may be filed seriatim or at the same time. *Cf.* 35 U.S.C. § 121 (divisional applications to be filed "before the issuance of the patent on the other application," *i.e.*, be co-pending). As well, when an inventor conceives of an invention, often that idea can be seen as various related aspects which require differing disclosures. The applicant and his

---

[1] *See* ¶¶ 56 through 80 of the Counterclaim. Hereinafter, references to paragraph numbers will refer to paragraphs of the Counterclaim unless stated otherwise.
[2] *See* ¶¶ 81 through 98.
[3] *See* ¶¶ 99 through 107.

counsel may choose to file those related concepts in separate patent applications, which again are legitimately pursued at the same time. Palm's suggestion that there is anything untoward in "prosecuting patent applications with the PTO in parallel" (*see* ¶ 100) is simply absurd.

Second, while notifying the examiner of co-pending applications is now recommended, failure to do so cannot lead to a finding of inequitable conduct unless something occurred in the related application that would have been important to the examination in the second case, *i.e.*, the uncited co-pending application was "material" to the issuance of the patent in suit. *See, e.g., Dayco Products, Inc. v. Total Containment, Inc.,* 329 F.3d 1358 (Fed.Cir.2003) (co-pending application might be material if could lead to double patenting rejection or if examiner rejected substantially similar claims based on prior art); *Li Second Family Ltd. v. Toshiba Corp.,* 231 F.3d 1373, 1379, 56 USPQ2d 1681, 1686 (Fed.Cir.2000) (co-pending application relevant where applicant's statements regarding priority of invention had been previously rejected by the Board of Patent Appeals). The Federal Circuit has never held that failure to notify the examiner of a co-pending application, without more, is a material omission supporting an allegation of inequitable conduct.

In the Third Allegation, Palm baldly states *on information and belief* that the failure to cross cite co-pending applications led to "the HPL patentees repeatedly and knowingly and/or recklessly fail[ing] to disclose material prior art of which they were aware." ¶ 103. Paragraph 104 simply states that the applications leading to the '138, '157, and '428 Patents were not cited in the application leading to the '304 Patent. Nowhere does Palm recite specifically who did not cross cite the applications, what prior art was not disclosed, what claims and limitations in the applications the unidentified undisclosed art was relevant to, or where in the allegedly

undisclosed art those limitations could be found. These elements are all essential to pleading inequitable conduct with specificity.

Palm fails to properly allege "who." The Third Allegation refers variously to "the patentees" and "the HPL patentees," neither of which term is defined. This type of allegation is insufficiently specific. Under Rule 9(b), the allegation must "name the specific individual associated with the filing or prosecution of the application issuing as the [patent in suit] who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329.

More importantly, Palm fails to properly allege "what" and "where." The pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and *where in those references the material information is found*--i.e., the 'what' and 'where' of the material omissions." *Id.* (emphasis added). Nowhere does Palm inform the Court what references were undisclosed, let alone which claims the allegedly undisclosed information was relevant to, even with regard to the "example" of the '304 Patent. This failure must be fatal to these allegations.

Finally, Palm fails properly allege "why" and "how."[4] Palm needs to allege "the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record" and would have been supplied by the supposedly undisclosed art. *See id.* at 1329-20. No effort at this specificity is made.

These failures are neither minor nor excusable. They are not minor because inequitable conduct allegations, predicated on an intent to deceive the PTO, necessarily attack the personal integrity of the inventor and his counsel; they should not be lightly made. *See Burlington*

---

[4] Palm also fails to adequately plead intent with regard to the Third Allegation. However, given the gross inadequacies of the pleading of the other elements, this omission will not be addressed in detail herein.

*Industries, Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988)(an "unsupported charge of [inequitable conduct] is a negative contribution to the administration of justice").  They are not excusable because the missing information (if such information exists) was readily available to Palm.  The file wrappers (the complete history of proceedings in the PTO) for all of the patents referenced by Palm are public, accessible either online in the PTO's Public PAIR database or in hard copy.  Moreover, HPL made all of these file wrappers available to Palm *when Palm was first put on notice of infringement in May of 2008.*  There is no excuse either for failing to plead these allegations with particularity or pleading them on information and belief.  At least with regard to all of the necessary allegations except, perhaps, the intent element, the information was available to Palm.  *See Exergen*, 575 F.3d at 1330 (pleading on information and belief under Rule 9(b) permitted when the essential information lies under opposing party's control).

Any claim of inequitable conduct based on the Third Allegation should be dismissed, and the allegations of the Twelfth Defense relating thereto stricken (*see* ¶ 27).

**B.  The Second Allegation Fails to State Who, What, Where, Why and How**

The Second Allegation is barely more specific than the Third.  It generally alleges that in the applications leading to the '956, '304, '941 and '138 Patents in suit, Mr. Helferich and his "former patent counsel" (not identified) failed to disclose 24 prior art references of which they were aware.  ¶¶ 84, 89-92, 94, 95.  No statement is made of what in the prior art references might have been relevant, or to what claims or limitations in the various patents they may have related.  Only conclusory statements are provided that the "Missing Prior Art" should have been disclosed, and that "[o]ne or more of the references . . . were material and non-cumulative to one or more of the claims."  ¶¶ 89-93.

Again, Palm fails to identify a "who," the specific individual (presumably one or more of the unnamed "former counsel") omitted the disclosure in the various patent application. *See Exergen*, 575 F.3d at 1329. Critically, however, Palm's pleading wholly lacks any information regarding *what* in the "Missing Prior Art" was material, to which later issued claims and limitations, or any explanation of how the omission would have been important to an examiner. Palm thus completely neglects to mention the what, where, why and how deemed essential by the *Exergen* Court. *See id.* at 1329-30.

Palm also pleads the intent element of intent to deceive on information and belief, without any facts alleged upon which that belief is supposedly grounded. ¶ 96. This mirrors the allegations found inadequate in *Exergen:*

> Pleading on "information and belief" is permitted under Rule 9(b) when essential information lies uniquely within another party's control, *but only if the pleading sets forth the specific facts upon which the belief is reasonably based.* Here, [defendant's] pleading provides neither the "information" on which it relies nor any plausible reasons for its "belief." Moreover, the circumstances . . . alleged, even if true, do not plausibly suggest any "deliberate decision to withhold a known material reference" or to make a knowingly false misrepresentation--a necessary predicate for inferring deceptive intent. . . . The mere fact that an applicant disclosed a reference during prosecution of one application, but did not disclose it during prosecution of a related application, is insufficient to meet the threshold level of deceptive intent required to support an allegation of inequitable conduct.

*Id.* at 1330-31 (emphasis added; citation and footnote omitted). In fact, the Court went on to warn, "In the absence of [specific factual allegations], the district court was correct not to draw any permissive inference of deceptive intent with regard to the [patent in suit] lest inequitable conduct devolve into 'a magic incantation to be asserted against every patentee' and its 'allegation established upon a mere showing that art or information having some degree of materiality was not disclosed.'" *Id.* at 1331 (quoting *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir. 1987)).

As with the Third Allegation, any claim of inequitable conduct based on the Second Allegation should be dismissed, and the allegations of the Twelfth Defense relating thereto stricken (*see* ¶ 26).

### C. The First Allegation's Pleading of Intent is Wholly Inadequate

The First Allegation also falls significantly short of the *Exergen* standard. The First Allegation addresses the discussion of a prior art reference, the Jasinski patent, by Martin Zoltick (one of Mr. Helferich' patent prosecution counsel) in response to an office action. Palm contends that Mr. Zoltick misstated the scope of the Jasinski reference in arguing that the earlier patent did not negate the novelty of Mr. Helferich' invention.[5] In this instance, Palm does state who allegedly made the misstatement, what was said, what reference was at issue, and the claim limitations to which the argument related. But Palm again fails to adequately plead the intent element necessary to allege inequitable conduct under Rule 9(b). In fact, nowhere in the First Allegation does Palm assert that the alleged mischaracterization was done with intent to deceive the examiner (even on information and belief).

---

[5] HPL vigorously defends Mr. Zoltick's explanation of the Jasinski reference in relation to the claim limitation at issue as, in fact, correct; therefore the entire First Allegation is without foundation. A motion to dismiss is not, however, the place to endeavor to make that argument to the Court.

Rather, Palm alleges only that the "'956 patentees knew or should have known that their characterization of the Jasinski reference made to the PTO Examiner was false." ¶70. This contention is supported solely by Palm's analysis of the reference, which is contrary to that of Mr. Zoltick and his firm and apparently also contrary to that of the examiner, who was persuaded by the argument of Mr. Zoltick and allowed the claim. Arguing an interpretation of a reference to an examiner, even one that might ultimately be found to be incorrect, is *not* inequitable conduct without an intent to deliberately deceive the examiner. Nothing in Palm's pleading alleges that necessary element. Palm's mere assertion that Mr. Zoltick "should have known" that his interpretation of Jasinski was incorrect (assuming that it was) is not an assertion of intent to deceive. Negligence or even gross negligence will not suffice for inequitable conduct; even at the pleading stage some factual basis for an intent to deceive is required. *Exergen*, 575 F.3d at 1330-31; *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988)(*en banc*).

The First Allegation fairs no better than the other two under the *Exergen* standard for pleading inequitable conduct. Any claim of inequitable conduct based on the First Allegation should be dismissed, and the allegations of the Twelfth Defense relating thereto stricken (*see* ¶ 25).

## Conclusion

Palm has completely failed to meet the pleading standard for inequitable conduct articulated by the Federal Circuit in *Exergen*. Instead, it has perpetuated the plague of pleading apparently unfounded charges of fraud on the PTO, casting shadows on the reputations of Mr. Helferich and his counsel. These allegations should be removed from consideration in this case.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, L.L.C.,

respectfully requests that this Court enter an Order granting plaintiff's motion to dismiss and to strike, specifically:

1) Dismiss Palm's Third Counterclaim in its entirety pursuant to Rules 9(b) and 12(b)(6); and

2) Strike Palm's Twelfth Defense (paragraphs 25 through 27 of the Answer) in its entirety pursuant to Rules 9(b) and 12(f).

RESPECTFULLY SUBMITTED this 28th day of June, 2010.

                LAW OFFICES OF STEVEN G. LISA, LTD.

                By: *s/ Victoria Curtin*
                      Victoria Curtin
                      Attorney for Plaintiff

                      Victoria Curtin (NDIL ID #010897)
                      Victoria Gruver Curtin, P.L.C.
                      14555 N. Scottsdale Rd., Ste. 160
                      Scottsdale, Arizona 85254
                      Tel.: (480) 998-3547
                      Fax: (480) 596-7956

                      Steven G. Lisa (Ill. State Bar # 6187348)
                      Timothy D. Sperling (Ill. State Bar # 6293854)
                      Jon E. Kappes (Ill. State Bar # 6291678)
                      Mildred E. Park (Ill. State Bar # 6293523)
                      James David Busch (Ill. State Bar # 6299217)
                      Donald J. Lisa (Ill. State Bar # 1673998)
                      Law Offices of Steven G. Lisa, Ltd.
                      55 West Monroe Street, Suite 3210
                      Chicago, Illinois 60603
                      Tel. & Fax: (312) 752-4357