IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 1:10-CV-02411 |
| v. | § § | |
| PALM, INC. | § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

**DEFENDANT PALM, INC.'S OPPOSITION
TO PLAINTIFF'S MOTION TO DISMISS OR TO STRIKE**

**TABLE OF CONTENTS**

I. MOTIONS TO DISMISS AND MOTIONS TO STRIKE ARE RARELY GRANTED....3

II. PALM HAS ADEQUATELY PLED ITS INEQUITABLE CONDUCT DEFENSE AND COUNTERCLAIM..................................................................................................................4

    A. Palm's Has Adequately Pled Unenforceability of the '956 Patent Based on Affirmative Misrepresentation of Material, Non-Cumulative Prior Art..................6

    B. Palm Has Adequately Pled Unenforceability of the '956, '304, '941, and '138 Patents Based on Failure to Disclose Material, Non-Cumulative Prior Art ............9

    C. Palm Has Adequately Pled Unenforceability of the Patents-in-Suit Based on Pattern and Practice of Failure to Disclose Material, Non-Cumulative Co-Pending Patent Applications Naming the Same Inventor......................................12

    D. In the Alternative, the Court Should Grant Palm Leave to Amend ........................15

III. CONCLUSION............................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
　　2010 U.S. Dist. LEXIS 39984 (N.D. Ill. Apr. 23, 2010) .................................................... 6

*Civix-DDI, LLC v. Hotels.com, L.P.*,
　　2010 U.S. Dist. LEXIS 8073 (N.D. Ill. Feb. 1, 2010) ....................................................... 8

*Collins v. Morgan Stanley Dean Witter*,
　　224 F.3d 496 (5th Cir. 2000) ............................................................................................. 4

*Corcoran v. Chicago Park Dist.*,
　　875 F.2d 609 (7th Cir. Ill. 1989) ....................................................................................... 4

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
　　120 F.3d 1253 (Fed. Cir. 1997) ......................................................................................... 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
　　575 F.3d 1312 (Fed. Cir. 2009) ................................................................................ passim

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Inc.*,
　　292 F.3d 1363 (Fed. Cir. 2002) ....................................................................................... 12

*Lincoln Nat'l Life v. Transamerica Financial Life Ins. Co.*,
　　No. 1:08-CV-135, 2009 U.S. Dist. LEXIS 110599 (N.D. Ind. Nov. 25, 2009) ................. 5

*McKesson Info. Solutions, LLC v. Trizetto Group*,
　　2005 U.S. Dist. LEXIS 6733 (D. Del. April 20, 2005) ..................................................... 4

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
　　331 F.3d 406 (3d Cir. 2003) .............................................................................................. 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
　　2009 U.S. Dist. LEXIS 118383 (D. Del. Dec. 18, 2009) ................................................. 12

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
　　697 F. Supp. 1360 (D. Del. 1988) ..................................................................................... 4

*Salcer v. Envicon Equities Corp.*,
　　744 F.2d 935 (2d Cir. 1984) .............................................................................................. 4

*Trueposition, Inc. v. Allen Telecom, Inc.*,
　　2003 U.S. Dist. LEXIS 881 (D. Del. Jan. 21, 2003) ......................................................... 5

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
 20 F.3d 771 (7th Cir. 1994) .................................................................................................. 6

*Williams v. Jader Fuel Co.*,
 944 F.2d 1388 (7th Cir. 1991) ......................................................................................... 4, 15

**Rules**

Fed. R. Civ. P 12(b)(6) ................................................................................................................. 3

Fed. R. Civ. P. 12(f) ..................................................................................................................... 3

Fed. R. Civ. P. 9(b) ...................................................................................................................... 5

**Regulations**

35 C.F.R. § 1.56 ......................................................................................................................... 10

**INTRODUCTION**

In its Answer and Counterclaims, Defendant Palm, Inc. ("Palm") alleges that the patents-at-issue in this suit are unenforceable due to inequitable conduct. The law requires Palm to set out its inequitable conduct defense with particularity. Palm has done so. It alleges three distinct threads of its defense, set out over thirteen pages. Only one theory is required for Palm to state a defense and counterclaim.

First, Palm alleges that Plaintiff Helferich Patent Licensing, LLC's ("HPL's") original patent lawyer misrepresented the nature of a material prior art reference -- U.S. Patent No. 5,555,446, assigned to Motorola and naming Leon Jasinski as the sole inventor (the "Jasinski '446 patent") -- during the prosecution of the first of HPL's many interrelated patents (U.S. Patent No. 6,087,956 or "the '956 patent"). Answer, ¶¶ 56-80. HPL's '956 patent is one of the patents asserted against Palm. HPL's patent lawyers, Mr. Martin Zoltick and Mr. Brian Rosenbloom, made this misrepresentation after being challenged by the Examiner from the Patent and Trademark Office ("PTO"), in an effort to convince the Examiner to issue the '956 patent despite the prior art. Answer, ¶¶ 57-70. Messrs. Zoltick and Rosenbloom said the Examiner had, in essence, misunderstood the Jasinski '446 patent, and flatly stated that the Jasinski '446 patent did not have the elements that the Examiner had attributed to it. Answer,¶¶ 64-69. Palm alleges that the Examiner was in fact correct, and that Messrs. Zoltick and Rosenbloom misrepresented the Jasinski '446 patent in order to get the Examiner to allow HPL's patent. Answer, ¶¶ 70-80. Palm also points out where the elements that Messrs. Zoltick and Rosenbloom told the Examiner were missing from the Jasinski '446 patent can in fact be found in that prior art. Answer, ¶¶ 71-77.

Second, Palm alleges that HPL's original patent lawyers Messrs. Zoltick and Rosenbloom, Richard Helferich (who is the sole named inventor of the HPL patents), and HPL's new patent lawyers at the Law Offices of Steven G. Lisa, Ltd. (who are also litigation counsel in this case) each failed to disclose twenty four material prior art references during the prosecution of four of the patents-in-suit. Answer, ¶¶ 81-98. On February 8, 2008, HPL's patent lawyer filed a statement with the PTO. Answer, ¶ 83. In that statement, Jon E. Kappes of the Law Offices of Steven G. Lisa, Ltd. stated that in 1997 Mr. Helferich had provided a set of twenty-four different prior art references to his original patent lawyers. Answer, ¶¶ 84-88. According to the statement, Mr. Helferich "believed that the references were disclosed to the Patent Office" in the original patent application for his purported invention. Answer, ¶ 86. The original patent lawyers, however, never disclosed any of this prior art to the PTO Examiner. Answer, ¶ 87. After taking charge of HPL's patent work, no one at Steven Lisa's firm disclosed the prior art to the PTO Examiners reviewing HPL's applications. Answer, ¶¶ 88-93, 97.

Over *ten years* went by before anyone disclosed the prior art to the PTO. Given the extraordinary delay in disclosing the missing prior art, and the fact that at least four of HPL's patents-in-suit issued during that time without giving the PTO Examiner the opportunity to review the prior art that Mr. Helferich himself thought was important enough to disclose, Palm alleges that the art was intentionally withheld by the original patent lawyers and/or by Mr. Helferich, and was at least recklessly withheld by Helferich's subsequent patent lawyers at Steven Lisa's firm. Answer, ¶¶ 89-97. What is more, even after re-discovering the long-missing art, HPL took no steps to reopen the prosecution of the patents that it had obtained while the art somehow remained hidden. Answer, ¶ 97.

2

Third, Palm alleges that HPL's patent lawyers engaged in an intentionally deceptive effort to hide the fact that HPL was pursuing multiple patents on the same invention all at the same time. Answer, ¶¶ 99-107; *see also* Answer, ¶¶ 57, 82 (identifying those involved in prosecution of the patents-in-suit). The patentees chose not to disclose the co-pending applications to the PTO Examiner reviewing a different co-pending application. *Id*. This is one reason why so many of the patent claims at issue in this lawsuit are so similar to other claims in the HPL patents -- the claims issued without an Examiner knowing that HPL was even pursuing substantially similar claims in another application.

Palm has satisfied its obligations to allege its inequitable conduct defense with particularity under Federal Rule of Civil Procedure 9(b) and Federal Circuit precedent. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Palm alleged the facts and circumstances of the patentee's inequitable conduct with particularity, identifying "the specific who, what, when, where, and how of the material misrepresentation or omission" to the PTO with respect to three different sets of misconduct. HPL now has more than adequate notice of Palm's defense and counterclaim. Palm will be supplying HPL with yet more detail as part of its unenforceability contentions, as required by this Court's local patent rules. N.D. Illinois Patent L-R 2.3. The Court should deny HPL's motion.

## ARGUMENT

### I. Motions to Dismiss and Motions to Strike Are Rarely Granted

Motions to dismiss under Fed. R. Civ. P 12(b)(6) and motions to strike under Fed. R. Civ. P. 12(f) are both rarely granted. When considering a Rule 12(b)(6) motion to dismiss, "[t]he well-pleaded factual allegations of the complaint and all reasonable inferences which follow from the allegations must be taken as true." *Corcoran v. Chicago Park Dist.*, 875 F.2d 609, 611

3

(7th Cir. Ill. 1989). A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (internal citations omitted).

Similarly, in considering a motion to strike an affirmative defense the Court construes all facts in favor of the nonmoving party and will deny the motion if the defense is deemed sufficient under the law. *See Procter & Gamble Co. v. Nabisco Brands*, *Inc.*, 697 F. Supp. 1360, 1362 (D. Del. 1988). As with motions to dismiss, motions to strike affirmative defenses are generally disfavored. *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991). Courts prefer not to grant a motion to strike "'unless it appears to a certainty that ... [the movant] would succeed despite any state of the facts, which could be proved in support of the defense.'" *McKesson Info. Solutions, LLC v. Trizetto Group*, *Inc.*, 2005 U.S. Dist. LEXIS 6733, *3 (D. Del. April 20, 2005) (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984)). That is not the case here.

## II. Palm Has Adequately Pled Its Inequitable Conduct Defense And Counterclaim

Palm has satisfied the pleading requirements for inequitable conduct. Spanning fifty-six paragraphs over thirteen pages of the Answer (¶¶ 25-27; 54-107), Palm spells out the "who, what, when, where, and how of the material misrepresentation [and] omission[s] committed before the PTO" with respect to HPL's patents-in-suit. *Exergen*, 575 F.3d at 1327. In *Exergen*, the Federal Circuit explained that the "who" aspect of inequitable conduct calls for an identification of a specific individual (or individuals) involved in the prosecution of the patent in which the alleged misconduct occurred. *Id.* at 1329. The "what" and "where" aspects involve identifying claims and claim limitations to which withheld prior art references are relevant. *Id.* Finally, the "how" aspect is satisfied by allegations explaining materiality—how a reasonable

4

PTO Examiner would have used allegedly withheld information in assessing the patentability of the claims.[1] *Id.* at 1329-30.

As with all fraud claims, allegations of intent "may be averred generally." *Exergen* notes that "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

Although inequitable conduct must be pled with particularity under Fed. R. Civ. P. 9(b), even these averments "remain subject to the liberal pleading standard of Rule 8, which requires only a 'short and plain' statement of a claim or defense." *Trueposition, Inc. v. Allen Telecom, Inc.,* 2003 U.S. Dist. LEXIS 881 at *17 (D. Del. Jan. 21, 2003); *see also Lincoln Nat'l Life v. Transamerica Financial Life Ins. Co.*, No. 1:08-CV-135, 2009 U.S. Dist. LEXIS 110599, *7 (N.D. Ind. Nov. 25, 2009) (Heightened pleading standards for inequitable conduct "do not require that [the defendant] definitively prove the merits of its claim. What is determinative here is that [the plaintiff] was given fair notice of the basis for [the defendant's] inequitable conduct defense"); *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n. 2 (3d Cir. 2003) ("The purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the claim.").

Indeed, this Court has indicated that Rule 9(b) should be applied in patent cases with an eye towards its "three main purposes: (1) protecting a defendant's reputation from harm; (2)

---

[1] The *Exergen* court did not engage in an analysis of the "when" requirement, but only because it is presumably obvious that "when" requires an identification of the time at which the misrepresentation or omission constituting the inequitable conduct occurred.

5

minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, 2010 U.S. Dist. LEXIS 39984, *20 (N.D. Ill. Apr. 23, 2010) (citing *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

Palm will discuss its three theories of inequitable conduct below, to demonstrate that they meet the "who, what, when, where, and how" aspects of *Exergen*.

### A. Palm's Has Adequately Pled Unenforceability of the '956 Patent Based on Affirmative Misrepresentation of Material, Non-Cumulative Prior Art

Palm alleges that the '956 patent is unenforceable due to misrepresentations that HPL's patent counsel made to the PTO during prosecution. Palm's allegations easily satisfy the "who, what, where, when, and how" standard of *Exergen*.

<u>*Who:*</u> Palm alleges that Martin Zoltick and Brian Rosenbloom, then of Mintz Levin, filed the papers including the misrepresentation at issue, and that the papers appear to bear a signature spelling out "Martin M. Zoltick." Answer, ¶¶ 57, 64.

<u>*What:*</u> Palm alleges that Messrs. Zoltick and Rosenbloom misrepresented a key piece of prior art to the PTO Examiner -- the Jasinski '446 patent, which was assigned to Motorola. Answer ¶¶ 65-69.

<u>*Where and When:*</u> Palm alleges that the PTO Examiner himself had identified the Jasinski '446 patent as material prior art to the pending claims of the HPL '956 patent. Answer, ¶ 59, 62. The Examiner rejected claims 16-20, 22-26, 41-45, and 48 of the HPL patent application because the Jasinski '446 patent made those claims obvious (in combination with other prior art references). Answer, ¶¶ 59, 62. Palm points HPL to the relevant PTO Office Action (dated February 16, 1999), and quotes the Examiner's findings at length. Answer, ¶¶ 58-63. Palm then points HPL to the relevant Amendment and Reply to Office Action submitted by

6

Mr. Zoltick (dated August 23, 1999), and quotes Mr. Zoltick's mischaracterization of the Jasinski '446 patent. Answer, ¶¶ 64-69.

*How:* Palm explains how the Jasinski '446 patent was material -- the patent was cited by the Examiner himself and used to reject HPL's patent claims as obvious. Answer, ¶ 59. Palm quotes the Examiner directly, from his statements in the Office Action explaining why he thought the Jasinski patent rendered the claims of the '956 patent application obvious. Answer, ¶ 63. It was only after Mr. Zoltick made his misrepresentation of the Jacinski '446 patent that the Examiner finally allowed the '956 patent to issue. Answer, ¶ 78. Had no one made these misrepresentations, it stands to reason that the original rejection would have remained in place.

These allegations go beyond the "who, what, where, when, and how" pleading standards of *Exergen*.[2] Additionally, Palm has alleged sufficient facts to demonstrate that the persons who committed inequitable conduct in the prosecution of the '956 patent acted with the requisite intent. In *Exergen*, the Federal Circuit explained that "'intent' may be averred generally." 575 F.3d at 1328. A party alleging inequitable conduct need merely "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Id.* at 1327.

Again, the factual details that Palm has alleged go beyond that standard. Palm alleged that Mr. Zoltick mischaracterized the Jasinski reference by claiming that it lacked a crucial feature that it indeed had ("a receiver for receiving a selective call signal having an information identifier signal identifying information that is not stored in the paging transceiver, but that that

---

[2] HPL's motion to dismiss does not seem to seriously challenge the fact that Palm's allegations have met these *Exergen* factors (presumably because HPL believes that Palm's allegations are, in fact, sufficient). Rather, HPL's only attack on this theory is that Palm has insufficiently alleged intent. Mot. at 8-9. For the sake of clarity, Palm nevertheless includes an analysis of each *Exergen* factor.

7

is available to be transmitted to the paging transceiver"). Answer, ¶¶ 70-71. Palm further alleges that Mr. Zoltick "knew or should have known that [his] characterization . . . was false." Answer, ¶¶ 56, 70-71. In short, Palm's factual allegations more than support the reasonable inference that Mr. Zoltick misrepresented facts about the Jasinski reference in order to overcome the examiner's initial rejection of the identified claims and to mislead the PTO into issuing the patent with these rejected claims.[3]

Palm's pleading mirrors one found sufficient under the *Exergen* standard in a recent case before this Court. *Civix-DDI, LLC v. Hotels.com, L.P.*, 2010 U.S. Dist. LEXIS 8073, at *28-31 (N.D. Ill. Feb. 1, 2010). In *Civix*, the defendant alleged that one of the patents-in-suit was unenforceable due to the patentee's misrepresentations and false statements about certain material prior art. The defendant named the prosecuting attorney who made the false statement, identified the substance of statements, explained when those false statements were made in a PTO interview, and detailed how the statements were factually incorrect with reference to certain claim limitations. *Id.* at 30-31. The Court found that the allegations of inequitable conduct supported a reasonable inference of intent and that the inequitable conduct claim was therefore sufficiently pled under *Exergen*. *Id.* at 31. Palm has followed precisely the same steps and its inequitable conduct claim should be similarly upheld.

---

[3] The inference of deceptive intent can also be based on the fact that the prior art in question is overwhelmingly material (as reflected by the fact that the Examiner rejected claims of the '956 patent application based on the reference). The fact that a reference is both material and withheld can provide the basis for an inference of deceptive intent. *See Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). For the reasons Palm has already explained, the Jasinski reference was highly material, as it served as grounds for the PTO examiner's initial rejection of various claims in the '956 application. Consequently, this fact provides further support for the conclusion that Palm has alleged facts sufficient to support an inference of intent as required by *Exergen*.

HPL's challenge of Palm's pleading amounts to a debate about the evidence and the weight it should be given. HPL's disagreement with Palm will be resolved by the Court (or by a jury advising the Court) at the end of the case. Palm has properly alleged inequitable conduct, and HPL has given the Court no reason to strike or dismiss its defense or counterclaim.

### B. Palm Has Adequately Pled Unenforceability of the '956, '304, '941, and '138 Patents Based on Failure to Disclose Material, Non-Cumulative Prior Art

Palm's pleading of inequitable conduct is more than adequate based simply on the allegations made in paragraphs 54-80 of its Answer, described above. In its Answer, Palm chose to go even further, by describing additional facts supporting yet further misconduct in procuring the HPL patents-in-suit.

In Paragraphs 81-98 of its Answer, Palm alleges that four of HPL's patents-in-suit -- the '956 patent, along with U.S. Patent No. 7,003,304 ("the '304 patent"), U.S. Patent No. 6,983,138 ("the '138 patent"), and U.S. Patent No. 6,097,941 ("the '941 patent") -- are unenforceable based on an extraordinary set of facts concerning twenty-four prior art references that were hidden from the PTO for eleven years. These include two of named inventor Richard Helferich's *own patents*. Answer, ¶ 84. Palm alleges facts showing that these twenty four references are material to the patents-in-suit -- Helferich himself thought they were material. His own patent lawyer represented that Helferich had been aware of the prior art before he filed his first patent application in September 1997, and that Helferich had thought the prior art had been disclosed long ago. Answer, ¶¶ 83-88.

Again, Palm's pleading goes beyond the standard set by *Exergen*:

<u>*Who:*</u> Palm alleges that named inventor Richard Helferich knew of the missing prior art back before September 1997, when the first of his patent applications was filed. Answer, ¶ 85. Mr. Helferich's patent lawyer Jon Kappes himself made this representation about Helferich's

9

knowledge of the prior art in a document filed with the PTO on February 5, 2008. *Id.* Palm also alleges that Mr. Helferich's original patent lawyer, Mr. Zoltick, and his subsequent patent lawyer, Mr. Kappes and others at the Law Offices of Steven G. Lisa, Ltd., knew of the missing prior art. Answer, ¶¶ 82, 86-87.

*What:* Based on Mr. Helferich's patent lawyer's own representations to the PTO, Palm alleges that twenty-four prior art patents -- including two patents naming Mr. Helferich himself as an inventor -- were known by the patentees before September 1997 yet remained undisclosed to the PTO for eleven years. Answer, ¶¶ 84-88. Palm lists all of the patent numbers for twenty-four missing prior art patents in its Answer, ¶ 84.

*When and Where:* Palm alleges the misconduct conduct took place on a rolling basis from September 1997 through the time of filing of each of the '956, '304, '941, and '138 patents. Answer, ¶¶ 85, 89-92. Palm further alleges that additional misconduct took place in February 2008, when Mr. Kappes and the Law Offices of Steven G. Lisa, Ltd. disclosed the references during the prosecution of another patent application, yet took no steps to reopen the prosecutions of the '956, '304, '941, and '138 patents based upon the failure to disclose these references in those prosecutions or otherwise notify the PTO of the extraordinary set of circumstances surrounding the long-missing prior art. Answer, ¶¶ 89-92, 97.

*How:* Palm has alleged "how" the long-missing prior art is material to the four tainted HPL patents. Materiality is assessed by asking whether a reasonable examiner would have found the prior art important to patentability. A patentee owes a duty of candor to the PTO to disclose any art that the patentee is aware of that he or she believes is material. *See* 35 C.F.R. § 1.56. Here, as Palm alleges, HPL's patent lawyer Mr. Kappes wrote to the PTO explaining that named inventor Helferich thought the missing prior art had in fact been disclosed in 1997. Answer, ¶

10

86. Helferich himself thus believed he had a duty to disclose the missing prior art during prosecution of his patents. Answer, ¶ 94. Moreover, Mr. Kappes himself took steps to disclose the missing prior art in ongoing efforts to obtain yet more patents based on Mr. Helferich's purported invention. Answer, ¶¶ 83-84. The patentees themselves thus subjectively believed the missing prior art might be material. Answer, ¶¶ 94-95.

Finally, Palm has alleged facts firmly supporting a conclusion that the identified individuals acted with intent. Mr. Helferich was the inventor of the patents-in-suit and was also the inventor of two of the undisclosed references; he had clear knowledge of those patents and thought them to be material (or else he would not have thought the missing prior art had been disclosed to the PTO eleven years earlier). Answer, ¶¶ 84, 94-96. Further, according to the document filed by Mr. Kappes with the PTO in February 2008, Helferich's original patent lawyer Mr. Zoltick must have known about the missing prior art yet failed to disclose it to the PTO, despite the fact that his client thought the art had been disclosed. Answer, ¶¶ 86-87. It defies credulity that Helferich received multiple patents and yet failed to notice that the list of "References Cited" on each of the patents was missing twenty-four patents that he later represented to the PTO, through Mr. Kappes, that Helferich thought were disclosed to the PTO eleven years earlier. And Kappes and those working with him at the Law Offices of Steven G. Lisa, Ltd., though he unquestionably knew about and disclosed the twenty-four patents to the PTO in 2008 in order to obtain further patents for Mr. Helferich, failed to take any steps that would deal with the prior failure to disclose this art in the context of the many patents that had already been issued by the PTO.

In its motion, HPL attempts to rewrite the pleading standard for inequitable conduct. The law does not require Palm to create a set of charts comparing each of the twenty-four missing

11

pieces of prior art to each claim found in each of HPL's four patents in order to plead "how" the references are material. Again, the facts alleged in the Answer include that Helferich and Kappes themselves believed the missing prior art was in fact material -- Helferich thought the art had been disclosed eleven years earlier to comply with the patentee's duty of candor to the PTO, and Kappes chose to disclose the prior art in pending patent applications as of February 2008 but to avoid notifying the PTO with respect to the issued HPL patents or putting those earlier patents into reexamination. Answer, ¶¶ 83-97. Given this set of facts, the law does not require extensive claim charts be appended to Palm's Answer. The Court should deny HPL's motion.

> C. **Palm Has Adequately Pled Unenforceability of the Patents-in-Suit Based on Pattern and Practice of Failure to Disclose Material, Non-Cumulative Co-Pending Patent Applications Naming the Same Inventor**

Palm also alleges a third set of facts concerning yet further misconduct in procuring HPL's patents-in-suit. HPL's patent lawyers have established a pattern and practice of filing patent applications with the PTO and then failing to disclose the fact that HPL has other patents pending in the PTO relating to the same invention. Answer, ¶¶ 99-101.

HPL criticizes Palm's third set of factual allegations concerning additional misconduct as "the most general" in Palm's detailed inequitable conduct pleading (Mot. at p. 3), but the facts are simply easy to explain. A pattern of deceptive conduct can support an inequitable conduct allegation. *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Inc.*, 292 F.3d 1363, 1376 (Fed. Cir. 2002) (defendants "engaged in a pattern of intentional conduct designed to deceive the attorneys and patent office as to who the true inventors were."); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2009 U.S. Dist. LEXIS 118383, at *13 (D. Del. Dec. 18, 2009) (involving allegations where it was alleged that inequitable conduct was "apparent from the pattern of selective nondisclosure exhibited by [patentees] during prosecution").

12

Again, Palm's allegations meet the *Exergen* standard:

<u>*Who:*</u> Palm alleges that the HPL patentees engaged in the deceptive practice of prosecuting patent applications on the same invention in parallel, and failing to disclose earlier co-pending applications in new applications. Answer, ¶ 100. HPL's suggestion that the patentees are not identified is wrong; the identities of the HPL patentees are set out earlier in the pleading and did not need to be repeated. Answer, ¶¶ 57, 82.

<u>*What:*</u> Palm identified the prior art at issue -- co-pending applications relating to the same invention and naming the same inventor. Answer, ¶¶ 100-102. HPL's argument that Palm should have listed all the co-pending applications because HPL sent prosecution histories for the patents-in-suit during settlement discussions rings hollow. HPL is on notice that this third aspect of Palm's inequitable conduct defense and counterclaim is based on the failure to disclose HPL's own patent applications when pursuing new HPL applications. Answer, ¶¶ 100-103. Palm provides a specific example in the context of the '304 patent. Answer, ¶ 104. Those allegations note that HPL did not disclose three of HPL's own co-pending applications during the prosecution of the '304 patent. *Id*. Palm has also alleged how each of these co-pending application were being prosecuted by different examiners (Answer, ¶ 105), enabling HPL to shield the co-pending applications from discovery by these other examiners.

HPL's argument merely confirms that it is on notice of the facts underlying Palm's defense. Palm was not required to append a table listing all the HPL patent applications that HPL failed to disclose to the Examiner in later applications -- rather, Palm alleges that HPL never disclosed its earlier applications in its later ones. Listing every earlier application that HPL did not disclose in its own later applications when HPL never disclosed its earlier applications in its later ones is a true wasted effort -- one directed at forcing Palm to incur a

13

further burden and expense not required to eliminate any confusion about the allegations on HPL's part, not required by *Exergen*, and not required by Rule 9(b).

***Where and When:*** Palm alleges that HPL engaged in a pattern and practice of failing to disclose its earlier patent applications in each of HPL's own, later-filed co-pending applications that tainted all of HPL's patents-in-suit. Answer, ¶ 102. The failure to disclose the earlier applications at the time HPL filed a later application necessarily took place in each later application at the time HPL filed that later application.

***How:*** Palm alleges that HPL's own earlier-filed patent applications were material to patentability of HPL's later-filed applications because the inventions described in the co-pending applications were substantially similar. Answer, ¶¶ 101-102. Palm further alleged that the Examiners would have no reason to know of the prosecutions of other patents claiming substantially similar inventions. Answer, ¶¶ 99, 101, 102, 103.

HPL's argument again reduces a debate about the weight of the evidence. HPL asks the Court to give HPL a free pass because, according to HPL, inventors frequently prosecute multiple co-pending applications at the same time. Mot. at 3. HPL, however, misses the point. Palm alleges that HPL engaged in a deceptive pattern during prosecution of its patents-in-suit by prosecuting patent applications on the same invention with substantially similar if not identical claim language before different PTO Examiners and *failing to disclose the existence* of its earlier-filed applications. No one disputes that the law permits pursuing co-pending patent applications. Palm does dispute, however, that HPL's conduct complies with the duty of candor owed by patentees to the PTO.

**D. In the Alternative, the Court Should Grant Palm Leave to Amend**

Palm has alleged facts sufficient to state its inequitable conduct affirmative defense and declaratory judgment counterclaim. Palm also intends to comply with the Local Patent Rules by serving its unenforceability contentions by September 15, 2010 (if not before). Should the Court be persuaded by HPL, however, the Court should give Palm leave to amend its pleading. Fed. R. Civ. P. 15(a). There has been no undue delay, bad faith, or dilatory motive on the part of Palm. This litigation is still in an early stage; discovery has not yet commenced and the Court will hear HPL's motion on the same day as the initial status conference (which itself will be only a month before Palm serves its unenforceability contentions under the Patent Local Rules).

## III. CONCLUSION

For the foregoing reasons, Palm respectfully requests that the Court deny HPL's Motion to Dismiss and To Strike.

July 21, 2010

        Respectfully Submitted,

        COVINGTON & BURLING LLP

        By: */s/Michael M. Markman*
        Robert Haslam (ND Ill. ID No. 71134)
        COVINGTON & BURLING LLP
        333 Twin Dolphin Drive, Suite 700
        Redwood Shores, CA 94065
        T: (650) 632-4700
        F: (650) 632-4800

        Michael M. Markman (ND Ill. ID No. 191388)
        Winslow Taub (ND Ill. ID No. 233456)
        Leslie Harvey (ND Ill. ID No. 241203)
        Robert Williams (ND Ill. ID No. 247428)
        COVINGTON & BURLING LLP
        One Front Street

San Francisco, CA 94111
T: (415) 591-6000
F: (415) 591-6091

Daniel J. O'Connor (Bar No. 2086271)
Edward K. Runyan (Bar No. 6272971)
Daniel A. Tallitsch (Bar No. 6290889)
BAKER & MCKENZIE LLP
130 East Randolph Dr.
Chicago, Illinois 60601

*Attorneys for Defendant Palm, Inc.*